## 26233. COX *v.* DOLVIN REALTY COMPANY.

DECIDED OCTOBER 21, 1937. REHEARING DENIED NOVEMBER 4, 1937.

*Neely, Marshall & Greene, W. Neal Baird,* for plaintiff.
*Clarke & Clarke,* for defendant.

SUTTON, J. Thomas M. Cox, the owner of a certain house and lot in Atlanta, Georgia, was approached by a salesman of the Dolvin Realty Company, and was asked to sell this property. Cox at first stated that he did not care to sell, but later told the salesman he would sell the property if he could get $6250 for it. Within a short time thereafter the salesman for Dolvin Realty Com-

pany tendered to Cox a sales contract signed by H. H. Trawick, whereby Trawick agreed to purchase the property for said sum and on the terms stipulated. Cox accepted Trawick and signed the contract which, among other things, provided: "It is agreed by the parties hereto that in negotiating this contract the agents above referred to have rendered a valuable service; and it is agreed by the seller to pay the above agents for services rendered a regular commission as adopted by the Atlanta Real Estate Board. It is agreed that, if title is good and purchaser fails or refuses to complete this trade, purchaser will pay the above agent the amount of the commission said agents would have received had purchaser complied with this contract." Dolvin Realty Company did not sign the sales contract and was not a party to it. Trawick paid $100 to the Dolvin Realty Company as "earnest money" or a binder for the trade. He later failed and refused to carry out his part of the contract. Cox then made demand on the Dolvin Realty Company for the $100, and, on its failure to pay him said amount, he filed suit therefor in the municipal court of Atlanta. Dolvin Realty Company filed an answer and plea of set off, and alleged that it earned a commission of $312.50 in negotiating the contract of sale between the plaintiff and Trawick; that the plaintiff had authorized the defendant to sell his house and lot; that it procured and tendered Trawick as a purchaser, who was accepted by plaintiff, and the contract of sale was signed by them; that after crediting the $312.50 with the $100 in its hands the balance due by the plaintiff to the defendant was $212.50, for which amount it sued and prayed for a judgment in the plea of set off. The facts, as above stated, appear from the pleadings and the evidence. The judge directed a verdict in favor of the plaintiff for $100. The defendant's motion for new trial was overruled. It then appealed to the appellate division of the municipal court, where the judgment overruling the motion for new trial was reversed. The plaintiff excepts to that judgment; and also assigns error on the overruling of his motion to dismiss the appeal of the defendant to the appellate division of the municipal court, on the ground that the amount involved was more than $300.

■ The plaintiff's motion to dismiss the appeal to the appellate division of the municipal court, on the ground that the amount

involved was more than $300, and that the appellate division had no jurisdiction of the appeal, was properly overruled. The suit was for $100. The defendant in its plea of set off claimed that the plaintiff was due it a balance of $212.50, after allowing credit for the $100 in its hands, and prayed judgment for said amount. The pleadings alone determine the amount involved in the suit. *Reedy* v. *Helms,* 54 *Ga.* 121; *Bell* v. *Davis, 93 Ga.* 233 (18 S. E. 647); *Wheeless* v. *Carter,* 120 *Ga.* 725 (48 S. E. 121); *Owens* v. *College Park Supply Co.,* 35 *Ga. App.* 618. Measured by this rule, the amount here involved was less than $300, as judgment could not have been rendered in favor of either party for more than $212.50, exclusive of interest and costs. "In all cases [in the municipal court of Atlanta] wherein the amount involved, exclusive of interest, attorney's fees, and cost, is· less than three hundred dollars, an appeal shall lie from the order overruling or refusing the motion for new trial . . to the appellate division of said court." Ga. L. 1933, pp. 290, 293, 296, section 42-C; *Gavant* v. *Berger,* 182 *Ga.* 277 (185 S. E. 506). .

■ "The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Code, § 4-213. When an agent employed to sell certain real estate for the owner, at a stipulated price, procures a purchaser who is accepted by the owner, and a contract is entered into between them, the commission of such agent is earned, provided the agent acted in good faith towards his principal in the transaction, although the purchaser later defaults for no reason caused by the agent. "An agent will not be prevented from recovering commissions for obtaining a purchaser who is accepted, in furtherance of which a binding contract is made, though the purchaser deliberately refuses to consummate the contract." *Baker* v. *Strawder,* 50 *Ga. App.* 388 (4) (178 S. E. 206); *McGlawn* v. *Lane,* 34 *Ga. App.* 58 (128 S. E. 219); *Payne* v. *Ponder,* 139 *Ga.* 283, 286 (77 S. E. 32). The uncontradicted evidence shows that the Dolvin Realty Company, as agent for Thomas M. Cox, procured a purchaser, H. H. Trawick, who offered in writing to buy certain real estate belonging to Mr. Cox on the terms and conditions as specified by said owner, who accepted the purchaser tendered and executed the contract of sale; that the Dolvin Realty Company

acted in good faith in procuring the purchaser; and that the usual and customary commission on a sale of $6250 (which was the contract price in the sale in the present case, as adopted by the schedule of the Atlanta Real Estate Board) is $312.50, that is, 5 per cent. of the sale price. Under the facts of this case and the law applicable thereto, a verdict would have been authorized in favor of the defendant for $212.50.

■ The plaintiff contends that the defendant should have proceeded against the purchaser, Trawick, for its commission, under the provisions of the sale contract between Cox and Trawick, referred to in the statement of facts herein. Dolvin Realty Company did not sign the sale contract, and was not a party to it, and therefore could not sue the purchaser by virtue of such contract. *West* v. *Morris,* 10 *Ga. App.* 651 (73 S. E. 1075); *Harling* v. *Tift,* 43 *Ga. App.* 94 (157 S. E. 914). The judgment of the appellate division of the municipal court of Atlanta was correct.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*

FELTON, J., dissenting. (a) The real-estate agent in this case proposed the sale, and presumably provided the written contract which the seller and buyer signed. It provided that if the title to the property was good and the purchaser failed or refused to complete the trade, the purchaser would pay the agent the amount of commission the agent would have received if the purchaser had complied with the terms of the contract. The agent was not a party to the written contract. I think that under these circumstances the idea of an implied contract on the part of the seller to pay the agent a commission was excluded, especially one based on the idea that the seller was liable for the commission, not because a buyer had been produced who was ready, willing, and able to buy, but on the theory that the seller accepted the purchaser produced. I think the written contract covering the matter of commissions excluded the implied contract to pay. The agent's participation in the transaction amounts to an agreement thereto and waiver of the implied contract on the part of the seller to pay the commission.

(b) The plea was based on implied contract and it was necessary for the defendant to prove the reasonable value of its services. The only evidence of that was that five per cent. was the

commission fixed by the Atlanta Real Estate Board, and that that was the usual and customary commission. This was no evidence of reasonable value.

(c) The seller sued the agent for $100, which was a deposit put up by the buyer to bind the bargain. The agent answered the suit with the following contentions: that it had earned a commission of $312.50 in negotiating the contract of sale; that it had on hand $100, and that the seller is indebted to it in the sum of $312.50, less the sum of $100 which the agent had on hand; that it denied that it was indebted to the plaintiff in any sum, but said that the plaintiff is indebted to it in the sum of $212.50. My view is that there was involved in controversy the sum of $312.50, and that the appellate division of the municipal court of Atlanta did not have jurisdiction of the case. The court of necessity had to adjudicate whether the seller owed the agent $312.50 before a judgment could have been rendered for the plaintiff for $100 or for the defendant for $212.50. The case is not similar to one where an account is sued on, where voluntary credits by the defendant are shown, thus reducing it. In this case there was no voluntary payment to the defendant. It had $100 which belonged to the plaintiff in any event, and the adjudication as to whether it had a right to apply the $100 as attempted depended on the adjudication of the $312.50 controversy in its favor.